IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICOLE L. RYDER | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-00726 |
| | § | |
| SHELL OIL COMPANY AND | § | |
| SHELL EXPLORATION & | § | |
| PRODUCTION COMPANY | § | |
|     Defendants | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR COMPLETE SUMMARY JUDGMENT**

# EXHIBIT 1



14515 Briarhills Parkway
Suite 218
Houston, Texas 77077-1034

**A+ PRO-SCRIPTION**
*A Professional Transcription Company*

Phone 281/496-5788
Fax 281/531-7898

**Recorded Conversations**

Operator (April)/The Reed Group
Nicole Ryder
2013-6-26-11...

Melinda/The Complete Women's Care Center
Kim/The Reed Group
2013-7-16-12...

Sasha/The Reed Group
Melissa/The Complete Women's Care Center
2013-7-16-13...

*ORIGINAL*

## TABLE OF CONTENTS

|  |  | Page Nos. |
|---|---|---|
| **Section 1** | Operator (April)/The Reed Group<br>Nicole Ryder<br>(2013-6-26-11...) | 1 - 8 |
| **Section 2** | Melinda/The Complete Women's Care Center<br>Kim/The Red Group<br>(2013-7-16-12...) | 1 - 4 |
| **Section 3** | Sasha/The Reed Group<br>Melissa/The Complete Women's Care Center<br>(2013-7-16-13...) | 1 - 4 |
| **Section 4** | **Acknowledgement**<br>Notary | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICOLE L. RYDER | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-00726 |
| | § | |
| SHELL OIL COMPANY AND | § | |
| SHELL EXPLORATION & | § | |
| PRODUCTION COMPANY | § | |
|     Defendants | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR COMPLETE SUMMARY JUDGMENT**

# EXHIBIT 1A

1

**Recorded Telephone Conversation**

***Q:***    ***Question (Operator, Reed Group)***

***A:***    ***Answer (Nicole Ryder)***

Q:    Thank you for calling Reed Group on behalf of Garden, this is April.  How can I help you?

A:    Hi, there.  I was told that I needed to call and get a Med-Cert form emailed to me.

Q:    Okay. Well, I could definitely help you out with that today.  What is your name?

A:    Nicole Ryder, R-y-d-e-r.

Q:    And also will you verify your mailing address?

A:    Yes.  Work address or is it …?

Q:    Uh, your physical address, your personal home address.

A;    218 James Court, Houston, 77094.

Q:    Thank you. So, you'll be out on a leave?

A:    Uh, well, it was – it's I guess for a maternity leave thing.  I don't – I don't really know (laughs).

Q:    Okay.  No problem. Today will be the initial notice of your request for the maternity leave for time off.  I'll be gathering information from you as we're talking, I'll be typing into the computer system.

A:    Okay. So, I guess it's – it's four absences that I had last month --

Q:    Okay.

A:    -- uh, but they were surrounding the symptoms like morning sickness and all that.

Q:    Okay.

A:    So it was to get a form to fill out and have my doctor fill out, I guess.

Q:    All right. Sure.  Basically, since Reed Group has taken over to manage the leave of absence under FMLA portion of the employee's time off --

| | | |
|---|---|---|
| 1 | A: | Uh-huh. |
| 2 | Q: | -- we go through this process and we'll be asking you the date uh you know when your |
| 3 | | last day at work was – the first day that you actually missed and how long you'll be |
| 4 | | out and then we send the forms out to you. |
| 5 | A: | Okay.  Well, let's see, I guess I need to pull up – (clears throat) – excuse me. |
| 6 | Q: | What is the best contact number for you? |
| 7 | A: | Uh, 281-382-8440. |
| 8 | Q: | And is that a cell phone or a home number? |
| 9 | A: | Cell phone. |
| 10 | Q: | Would it be okay to leave a message on that line if we needed to? |
| 11 | A: | Yes. |
| 12 | Q: | And what was your date of hire with Shell? |
| 13 | A: | Uh, equated date or …? |
| 14 | Q: | Uh, the hire – your hire date, when you initially started with them. |
| 15 | A: | Uh, most recently it would – it was – shoot, I don't even know.  Uh, I'm sorry, I'm |
| 16 | | pulling up my stuff right now. |
| 17 | Q: | Do you happen to know your employee ID number? |
| 18 | A: | Yes.  104367. |
| 19 | Q: | Thank you. |
| 20 | A: | So, last hire date was 06-16-2008. |
| 21 | Q: | That's exactly what I show. |
| 22 | A: | Okay. |
| 23 | Q: | What is your job title? |
| 24 | A: | Uh, contracts representative. |
| 25 | Q: | And what is your work schedule like? |

3

1    A:    Uh, it's I have the "A" Friday's off, 980.

2    Q:    Thank you. And what is your estimated delivery date?

3    A:    Uh, January 3rd – not for a long time.

4    Q:    Okay. And has the doctor taken you out of work on a continuous leave or are you on

5          an intermittent leave?

6    A:    No.  I guess it would be intermittent.

7    Q:    Okay.  And will you planning on delivering normal or by C-section?

8    A:    Uh, hopefully, normal.

9    Q:    Okay. And it is too early to tell if it's a boy or a girl, right?

10   A:    Yeah, too early.

11   Q:    And the next day would need your provider's information -- the doctor's name and the

12         phone number.

13   A:    All right.  It's Dr. Lisa Beard, B-e-a-r-d.

14   Q:    Uh-huh.

15   A:    And let me find her phone number.  It's 713-791-9100.

16   Q:    And do you happen to have a fax number for the doctor?

17   A:    Uh, no, I don't.

18   Q:    No problem. And what was the first day that you missed work?

19   A:    Uh, I missed May 8th and 9th and I have the fax number now if you want it, sorry to …

20   Q:    Okay. I'll take that.

21   A:    All right.  713-791-1016.

22   Q:    Thank you.  So you missed the 8th and the 9th?

23   A:    Yes.  And then also the 29th and 30th.

24   Q:    29th and 30th.

25   A:    Yes.

4

| | | |
|---|---|---|
| 1 | Q: | All in May, right? |
| 2 | A: | Yes.  All in May. |
| 3 | Q: | Do we know how long the doctor's going to support intermittent leave?  Is that going |
| 4 | | to be up – up to delivery? |
| 5 | A: | I have no idea.  I'm actually kind of confused about the form because I thought it was |
| 6 | | for just day – when you were out for four days or more -- |
| 7 | Q: | Uh-huh. |
| 8 | A: | -- and that they were all consecutive, but is that not correct? |
| 9 | Q: | Well, the Med-Cert form would be if you were out for four – for four or more days. |
| 10 | | That's what the Med-Cert form is for. |
| 11 | A: | Four or more consecutive? |
| 12 | Q: | Correct.  Now we have FMLA paperwork that can be filled out to support intermittent |
| 13 | | time. |
| 14 | A: | Okay. |
| 15 | Q: | So, being that you're missing days here and there, the 8th, 9th, 29th, and 30th, then |
| 16 | | FMLA would cover those days and we have paperwork for that. |
| 17 | A: | Okay. |
| 18 | Q: | Okay. What was your last day that you actually worked before you had missed? |
| 19 | | Would it have – have been the 7th? |
| 20 | A: | Yes. |
| 21 | Q: | Okay.  So, we will actually be sending you the FMLA paperwork through the mail.  It |
| 22 | | is due back to Reed Group within 15 days. |
| 23 | A: | Is there any way I could get a copy emailed?  I have the appointment tomorrow. |
| 24 | Q: | Yes. That was my next question – |
| 25 | A: | Okay. |

5

| | | |
|---|---|---|
| 1 | Q: | -- if you want to email it.  What is your email address? |
| 2 | A: | Nicole.ryder@shell.com. |
| 3 | Q: | Okay.  So, I'll email the paperwork to you. |
| 4 | A: | Wonderful, thank you. |
| 5 | Q: | I'm not sure if you're gonna be receiving disability from Shell Disability Management |
| 6 | | at this time or if that would start, I guess, after you have the baby and you're out for a |
| 7 | | continuous period of time. |
| 8 | A: | Okay. |
| 9 | Q: | So, I don't think the Med-Cert at this time would be necessary to get filled out – I |
| 10 | | mean, you could get it filled out by the doctor and send it in, but once you do deliver |
| 11 | | then we'll ask for an updated form as well. |
| 12 | A: | Okay.  They asked me to get one filled out now, too. |
| 13 | Q: | They did? |
| 14 | A: | Yes. |
| 15 | Q: | Did you speak with the Shell health representative already? |
| 16 | A: | No, with uh my HR rep. |
| 17 | Q: | Your HR rep told you.  Okay. |
| 18 | A: | Yes. |
| 19 | Q: | Okay. Well, then we will have you fill it out – we'll have it filled out. If you like, I |
| 20 | | could fax this – these forms over to the doctor as well. Would you like me to fax the |
| 21 | | form over to them? |
| 22 | A: | Uh, that's okay 'cause they don't know its coming. So, yeah. |
| 23 | Q: | But and you're going tomorrow, right? |
| 24 | A: | Yes. |
| 25 | Q: | So, you'll take it in. |

6

1   A:   Yeah.

2   Q:   Okay.

3   A:   Yeah.

4   Q:   So, uh, get those returned to us as soon as possible and they will come back faxed to

5        Reed Group.  If you have a pen and paper, I'll give you our fax number.

6   A:   Okay.

7   Q:   It's 1-866-301-6509.

8   A:   All righty.

9   Q:   They will – they will be reviewed within 48 hours upon receipt and this packet's

10       gonna include information on your child disability benefits and FAQ.  If your absence

11       is a non-occupational disability, you may receive a phone call from a Shell Health

12       Disability Case Manager –

13  A:   Okay.

14  Q:   -- to discuss the nature of your leave and your planned return to work.  I mean, you

15       have intermittent times, so I'm not sure if they will give you a call but they may.

16  A:   Okay.  So, it really doesn't apply to this but it's just something they ask for. So, I

17       guess –

18  Q:   Okay.

19  A:   -- I guess, I don't really know.

20  Q:   Uh, I'm not exactly sure being that it's on – it's intermittent time for you at this point.

21  A:   Right.

22  Q:   I'm not exactly sure.

23  A:   Okay.

24  Q:   But if for any reason if your dates of your absence change, make sure you contact

25       Reed Group.  Uh, if you miss work in the future and needed to be covered under

1        FMLA, you have two days to report that absence to us.

2    A:    Okay.

3    Q:    Okay. Any other questions?

4    A:    Uh, so it goes into the system now, but –

5    Q:    Yes.

6    A:    -- does that go out to anyone or no?

7    Q:    Uh, within 24 hours, yes, it does go out to Human Resource, and I'm showing on your

8        claim it's going to be Vicky George.

9    A:    Okay.  Uh, let's see, so that was not who I spoke to.  Let's see, it was Jennifer

10        Grounds.  So what will – what will be going to Vicky George?

11    Q:    Uh, basically your request for your time off, but you're eligible for the FMLA and

12        then just the paperwork stating that you're – that you're requesting the time.

13    A:    Okay. So, requesting – what will it show that I'm requesting off?

14    Q:    The 8th, 9th, 29th, and 30th.

15    A:    Okay. Okay. All right, but it won't – it doesn't go to my supervisor?

16    Q:    Uh, what is your supervisor's name?

17    A:    Dawn Suggs.

18    Q:    I don't believe.  I don't see any email that was included for her, no.

19    A:    Okay.  Okay. All right. Well …

20    Q:    Is she needing information regarding the …?

21    A:    No.

22    Q:    Oh, okay.

23    A:    No.  I was just wondering 'cause I haven't talked to her about it. I wanted to get all of

24        this out of the – settled first.

25    Q:    Okay.

8

| | | |
|---|---|---|
| 1 | A: | Yeah. |
| 2 | Q: | That's no problem. |
| 3 | A: | Okay. Well, I think that's everything – all of my questions, at least. |
| 4 | Q: | Okay.  And I will fax, or I will email that paperwork to you.  If you do not see it in |
| 5 | | your in box, make sure you check the junk mail or the spam folders as well. |
| 6 | A: | Okay.  I will. |
| 7 | Q: | All right. Thanks.  Well, thank you for calling into Reed Group and you have a good |
| 8 | | day. |
| 9 | A: | Thank you so much. |
| 10 | Q: | No problem. |
| 11 | A: | Bye-bye. |
| 12 | Q: | Bye-bye. |
| 13 | | (Telephone Conversation Concluded) |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICOLE L. RYDER | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-00726 |
| | § | |
| SHELL OIL COMPANY AND | § | |
| SHELL EXPLORATION & | § | |
| PRODUCTION COMPANY | § | |
| Defendants | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR COMPLETE SUMMARY JUDGMENT**

# EXHIBIT 1B

1

1                    **Recorded Telephone Conversation**

2      ***O:***            ***Operator (The Complete Women's Care Center)***

3      ***Also present: Melinda of Complete Women's Care Center; Kim of The Reed Group***

4                    (Inaudible) them -- office of the nurse. Am I permitted to …?

5                    OPERATOR:  Thank you for calling The Complete Women's Care Center.

6      For Dr. Hardwick Smith or Dr. Terney, press 1; for Dr. Beard, press 2; for Dr. O …

7      (ringing)

8                    MELINDA:  Complete Women's Care Center. This is Melinda.  How may I

9      help you?

10                   KIM:  Hi, Melinda.  My name is Kim and I work for The Reed Group.  We're

11     sending a medical leave for a Nicole Ryder and I just need to verify some of the

12     information the doctor sent around the paperwork.  Is there somebody there that can

13     help me with that?

14                   MELINDA:  Uh, I can help you out the best I can.  Uh, you say what is the

15     patient's name again?

16                   KIM:  Nicole Ryder and its R-y-d-e-r.

17                   MELINDA:  All right.  Okay.  So, the doctor (inaudible)

18                   KIM:  (Inaudible) – we're here for the claimant when she delivers from 1-3 to

19     2-17, you know – it is in (inaudible) of her date.

20                   MELINDA:  Uh-huh.

21                   KIM:  But what I'm wanting to know is are you – is the doctor going to be

22     supporting intermittent time or is she using it just periodically here and there prior to

23     her delivery date?

24                   MELINDA:  I'm sorry.  Can you repeat that question again?

25                   KIM:  She, uh, we just wanted to know if the doctor's going to support

1    intermittent time FMLA usage time prior to delivery. So she has appointment times,

2    you know, but it's affecting her job schedule or if she's just, you know, not feeling

3    well due to her pregnancy and misses a day of work.

4         MELINDA:  Uh, let me see here.  It hasn't showed why it was filled out so

5    early on (laughs) – in the pregnancy.  Okay, I think – let's see here – this patient has a

6    total of 13 appointments scheduled total to be seen with the physician that's without

7    any problems during pregnancy.  Uh, her due date is not until uh January and so she's

8    still uh early along here. Uh, so as far as we know as of right now, there are no

9    complications but then again, you know, as you know the due date can, delivery date,

10   can always change.

11        KIM:  Uh-huh.

12        MELINDA:  So...does that help answer your question?

13        KIM:  Well, kind of. What we need to know is it times that she – so, let's say

14   for her appointment times if it's during the hours that she's actually scheduled. So

15   she's missing time from her work schedule.  Is it possible that you guys are gonna

16   support that time or – I guess what we're trying to --

17        MELINDA: Oh, okay …

18        KIM:  -- find out is if do we need to cover her on an intermittent type of basis

19   as well?

20        MELINDA:  Oh, that – that I'm not sure of. I'm not sure what her schedule

21   work hours are.  I don't think that was left on the FMLA form or if that's why she was

22   having them filled out prior to.  Uh, so that's the reason why she had them filled out so

23   soon because of appointment times and we do have a list of all of her appointments

24   scheduled out, uh, you know up until she delivers.  So, I mean, we have those times

25   again. I'm just not sure if uh – if that's during her work time or if she needs that to be

1   uh included in her FMLA or not.

2           KIM:  Well, we've been notified –

3           MELINDA:  Usually, the patients don't ask for that.

4           KIM: -- by her employer that she's been missing an excessive amount of time

5   due to her pregnancy and just, you know, she's been using time. So, we just need to

6   know if – if the doctor's supporting incapacity time because she's been missing time.

7   So if we can cover those days for her – for her job.

8           MELINDA:  Okay.  Okay, let me get – get a number to have someone call you

9   back on all this information then.  Okay?

10           KIM:  Okay.

11           MELINDA: And that way we can make sure we, you know, make sure we

12   have this all right on all this time that was being missed.  Okay.  Your name again?

13           KIM:  My name is Kim, but they can call back to Sasha.

14           MELINDA:  Sasha?

15           KIM:  Uh-huh.

16           MELINDA:  Okay. And what's the number?

17           KIM:  866 –

18           MELINDA:  Okay.

19           KIM:  Oh, I'm sorry.  Let's start again.  720 –

20           MELINDA:  Okay.

21           KIM:  -- 305 –

22           MELINDA:  All right.

23           KIM: -- 0009. That'll keep you out of the phone cue. (Laughs)

24           MELINDA:  Okay.

25           KIM:  That's my direct number.

4

1      MELINDA:  Well, thank you so much.  Yeah.  Thank you so much.

2      KIM:  Right.  Do you think they'll be calling within the next day or …?

3      MELINDA:  (Sighs) Uh, yeah, let me uh give this to uh the person who

4 actually filled out those forms and that way they'll uh, be able to get ahold of you soon

5 about this information.  Okay?

6      KIM:  Okay.  Perfect. Thank you so much.

7      MELINDA:  Thank you.

8      KIM:  Bye-bye.

9      MELINDA:  Bye.

10        (Telephone Conversation Concluded)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICOLE L. RYDER | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-00726 |
| | § | |
| SHELL OIL COMPANY AND | § | |
| SHELL EXPLORATION & | § | |
| PRODUCTION COMPANY | § | |
| Defendants | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR COMPLETE SUMMARY JUDGMENT**

# EXHIBIT 1C

1

<u>**Recorded Telephone Conversation**</u>

*SASHA:  (The Reed Group)*

*MELISSA:  (Complete Women's Care Center)*

SASHA:  Thank you for calling the Reed Group, this is Sasha.  How may I help you?

MELISSA:  I'm sorry.  You said your name is Sasha?

SASHA:  Yes.

MELISSA:  Okay.  I believe uh we received a voice mail from you. I'm calling – my name is Melissa.  I'm calling with Complete Women's Care Center.

SASHA:  Okay.

MELISSA:  It was in regards to uh patient Nicole Ryder.

SASHA:  Okay.  Thank you.  Uh, let me get this patient pulled up. If you wouldn't mind holding a moment.

MELISSA:  No problem.

SASHA:  Thank you.  Do you mind holding while I pull her up just a moment?

MELISSA:  No problem.

SASHA:  Okay. Thank you.  Okay. Thanks so much for holding.  I just needed to look in the case a little bit.  So it looks like Nicole's applying for an intermittent leave of absence and uh, we are just needing to see if this is supported by the doctor uh beginning May 8th.

MELISSA:  Beginning May 8th.  Uh, give me one second.

SASHA:  Sure.

MELISSA:  Okay.  No, that's actually uh not supported on our end.  Uh, it looks like she hadn't came into her actual uh neo-b appointment until May 30th.

SASHA:  Okay. So nothing …

2

1    MELISSA:  And that she – and she last saw the doctor on uh June 27th and it

2    looks like her only complaint was she had headaches, but there was uh no medical

3    necessity for her to be off.

4    SASHA:  Okay, let's see here.  Your name again, I'm sorry.

5    MELISSA:  Melissa.

6    SASHA:  Okay. And so her first appointment wasn't until the 30th of May?

7    MELISSA:  Uh-huh.

8    SASHA:  Okay.

9    MELISSA:  Yeah and then she came back to see us on June 27th and uh, it

10   looks like when she met with the doctor, her only complaint was headaches.  Uh, they

11   were similar prior to her pregnancy and uh, Dr. – Dr. Beard just uh basically discussed

12   with her what she can do – what medication she could take and that uh, she said that

13   after she's 14 weeks, she can meet with a neurologist --

14   SASHA:  Okay.

15   MELISSA: -- if the headaches continue but other than that, there was uh no

16   other complaints for her.

17   SASHA:  Okay. And according to the paperwork that we received from Dr.

18   Beard, he did support the employee to be out uh, it looks like from January 3rd, 2014

19   to February 17th, 2014 for just appointment time for intermittent FMLA; is that

20   accurate?

21   MELISSA:  No.  But it – well, it's not uh, it's not for her appointment time.

22   It's for after her delivery.  That'll be her six to eight week FMLA period.

23   SASHA:  Oh, so that's for continuous leave?

24   MELISSA: Yes.  That's for continuous.

25   SASHA:  So, the employee uh is not supported to be out intermittently for her

3

1 pregnancy by the doctor.

2    MELISSA:  No. She uh – unless Dr. Beard puts her on bed rest; however, that

3 still wouldn't be like intermittent leave.  It'd just be like a continuous leave, if she

4 were to put her on bed rest.  Other than that, we don't put them on intermittent leave.

5    SASHA:  Okay. I'm just making notes, sorry.

6    MELISSA:  No.  No, problem.

7    SASHA:  Thank you. And her due date is about the 3rd of January 2014.

8    MELISSA:  Uh-huh.

9    SASHA:  Okay.

10    MELISSA:  Yes, ma'am. That's her estimated date.

11    SASHA:  (Typing) And the employee or the patient was referred to or at least

12 given the option to see a neurologist if the headaches uh --

13    MELISSA:  Uh-huh.

14    SASHA:  -- continued.

15    MELISSA:  Yeah. After – after she's 14 weeks, she's able to go see a

16 neurologist for it.

17    SASHA:  Okay.  So, not to be repetitive but just to confirm the employee is not

18 supported by the doctor for intermittent FMLA leave.

19    MELISSA:  Uh-huh.

20    SASHA:  Okay. I got this in here. I do have that she is supported for

21 continuous FMLA for the time, you know, from when she delivers for six weeks – six

22 to eight weeks.

23    MELISSA:  Uh-huh.

24    SASHA:  Uh, but other than that, we'll be – we'll deny the intermittent FMLA

25 if it's not supported.  Uh, she did report, you know, times – the 8th of May the 9th of

4

1    May, the 29th of May and the 30th. So, if her first appointment wasn't even until the

2    30th –

3            MELISSA:  Uh-huh.

4            SASHA:  -- then that definitely isn't supported.  Okay.  If you have a contact

5    number I could call you back on if needed?

6            MELISSA: Certainly.  It's going to be 713 –

7            SASHA:  Okay.

8            MELISSA:  -- 791 –

9            SASHA:  Okay.

10          MELISSA:  -- 9100. And to my direct extension is going to be 2379.  Uh, it

11    will either be myself or Lynn who will answer and you can just ask for Melissa.

12          SASHA:  Okay.  Perfect. Well, thank you so much, Melissa.  I really

13    appreciate it.

14          MELISSA:  You're welcome.  Not a problem.

15          SASHA:  Have a good day.

16          MELISSA:  You, too.  Bye-bye.

17          SASHA: Thank you.  Bye.

18    .

19                 (Telephone Conversation Concluded)

20

21

22

23

24

25

THE STATE OF TEXAS:

COUNTY OF HARRIS:

   I, Deanie K. Bruess of A+ Pro-scription and statewide Notary Public in and for Harris

County, Texas, do hereby certify that the preceding three (3) transcripts were transcribed from

three (3) wav files accurately and to the best of my ability.

   I further certify that I am neither attorney nor counsel for, or retained to or employed

by the parties hereto or financially interested in said action.

   Given under my hand and official seal of office this the 25th day of March, 2015.



DEANIE K. BRUESS
Notary Public, State of Texas
My Commission Expires
December 04, 2015

Deanie K. Bruess
Notary in and for the State of Texas

A+ PRO-SCRIPTION
14515 Briarhills Parkway, Suite 218
Houston, Texas 77077
(281) 496-5788